Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5170 | **DATE** | 9/29/2003 |
| **CASE TITLE** | Debra Sheridan, et al vs. Michael Flynn, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The plaintiffs' complaint fails to: (1) state a cause of action arising under federal patent laws, or (2) require the resolution of a substantial question of federal patent law, and this court grants Plaintiffs' motion to remand. This case is hereby remanded to the Circuit Court of DuPage County.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 3 0 2003 date docketed | | |
| ✓ | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| | | 03 SEP 29 PH 4:25 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
SEP 30 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Debra Sheridan et al | ) | |
| | ) | |
| v. | ) | NO. 03 C 5170 |
| | ) | |
| | ) | |
| Michael Flynn, Roberto Tirona, | ) | Ronald A. Guzman |
| Allan Franowsky, and Steven | ) | United States Judge |
| Koznarek | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a motion to remand. We find that the plaintiffs claim fails to state a case of action under federal patent statutes, and grant the plaintiffs' motion to remand.

### Statement of Facts

The plaintiffs and defendants are or were members of the Board of Directors for Trinity Capital Partners ("TCP"). Defendant Flynn incorporated Trinity Capital Partners in Illinois in late December 1999 for the purpose of providing reduced risk construction loan administration and collateralization services and products to financial institutions. The company's sole product was a unique business model ("model"), conceived by Defendant Flynn, for producing reduced risk loans. The purpose of TCP was to turn Defendant Flynn's model into a patentable business process and software ("process").

During the May 19, 2000, board meeting, Defendant Flynn said he would assign a percentage ownership in the pending patent to each board member proportionate to their stock

1

ownership interest. Defendant Flynn also said that each board member would have to execute a Patent Holder Interest Agreement as a condition precedent to receiving an assignment. Also during this meeting, the defendant promised he would file the assignments concurrently with the patent application.

In September 2000, Defendant Flynn filed a patent application, Serial Number 09/658,816, for the process, listing himself as the owner of the pending patent. At that time, TCP paid for the patent application. Defendant Flynn "represented" to the plaintiffs and the other board members that legal requirements necessitated that Flynn list himself as the owner of the pending patent on the patent application. The assignments, which Defendant Flynn promised during the May board meeting to concurrently file, were not filed with the patent application.

In July 2000, TCP contracted with Pal Graphics, Inc., to develop the software for the pending patent process. In October 2000, TCP terminated its agreement with Pal Graphics, Inc. In December 2000, TCP contracted with PriceWaterhouseCoopers ("PWC") to provide consulting services regarding a market study for the software, as well as the development of a business model/plan for TCP. In June 2002, PWC provided TCP with an engagement letter and also concluded the TCP had a "viable and unique market value proposition." In May 2002, TCP entered negotiations with a Wisconsin company, Exodus Group, LLC, to develop the software for the business model.

In June 2002, Defendant Flynn, acting as President and CEO of TCP, contracted with PWC. In July 2002, TCP IP n/k/a/ Paraclete Unlimited, LLC, was organized in Illinois. The members of TCP IP are Defendant Flynn, the individual TCP consulted with at PWC, and an individual from the Exodus Group, the Wisconsin graphics company TCP had negotiated with in May 2002. In July 2002, Defendant Flynn, acting as Chairman and President of TCP IP, executed the same agreement with PWC that he had executed on behalf of TCP in June 2002.

In August 2002, TCP's Board of Directors approved an Operating Agreement with TCP

2

IP, LLC, over the objections of the plaintiffs. The Agreement provided TCP with a 15% interest in TCP IP, LLC, and at that time, Defendant Flynn still owned and controlled 51 % of TCP.

In a special meeting of the Board of Directors of TCP on September 6, 2002, the Board proposed amendments to the operating agreement the Board had approved in August 2002. At that time, Defendant Flynn conditioned his assignment of the pending patent to TCP upon both his receipt of an additional 15,000 shares of TCP Common Stock and the reduction of the shares of TCP common stock held by all other board members by 50%. The Board also authorized and approved the acceptance, by TCP, of an assignment of the patent from Defendant Flynn in exchange for 15,000 shares of Common Stock of TCP. Then, the Board of Directors resolved to assign to TCP IP, LLC, the pending patent in consideration for becoming the managing member of TCP IP, LLC.

On October 9, 2002, Plaintiff Fregeau requested that several concerns be addressed at the next board meeting, including the Board's approval of issuing to Defendant Flynn an additional 15,000 shares of common stock and reducing the number of shares held by the other Board Members in exchange for his assignment of the pending patent to TCP.

A board meeting was held on October 15, 2002. Defendant Flynn was absent. Plaintiff Fregeau objected to conducting the meeting in his absence. Without the knowledge of the plaintiffs, Defendant Flynn had resigned on October 11, 2002. During the board meeting on October 15, Plaintiff Fregeau requested that her concerns, expressed on October 9, be addressed. The other attending board members insisted on repealing corporate actions previously taken by the board before addressing Plaintiff Fregeau's concerns. The board members said if the actions were rescinded and repealed during the "old business" portion, then

3

Plaintiff Fregeau's concerns would be addressed during the "new business" portion of the meeting.

The defendants called for votes on the actions, over the objections of the plaintiffs. Immediately after voting, the defendants announced and tendered the resignation of Defendant Flynn, effective October 11, 2002. Then, Defendant Tirona, the Secretary of TCP, tendered his own resignation. Then, Defendant Frankowsky announced his intent to resign from the Board of Directors. Subsequently, two other board members tendered their resignations from the Board of Directors of TCP.

Beginning in October 2002, the Plaintiffs made numerous requests to Defendants Flynn and Tirona to retrieve TCP's records and assets. In late October, Defendant Flynn stated that he would not respond to any further communications. In November 2002, Trinity Capital Partners R & D, Inc. ("TCP R&D") was incorporated in the State of Wisconsin. The Plaintiffs allege that Defendant Flynn is listed as the registered agent of TCP R&D, and is using the patent application and/or the actual model and process for his other businesses, including TCP IP and TCP R&D.

In March 12, 2003, Plaintiff Sheridan received a written non-negotiable offer to all cash investors of TCP from Defendant Flynn. The offer, set to expire on March 13, 2003, stated that TCP R & D would issue a promissory note to each cash investor in the amount of their cash investment, plus interest, payable in January 2004. Additionally, the offer stated that the plaintiffs would receive nothing and required TCP to execute mutual releases and a waiver of interest with respect to Defendant Flynn, TCP IP, and TCP R&D and stated that TCP must be dissolved.

Plaintiffs Sheridan and Fregeau contributed services, not cash, to TCP in exchange for their shares of common stock and would receive nothing from the offer. The plaintiffs have been acting

4

as president and secretary of TCP since the defendants' resignations.

## Discussion

In considering a motion for remand, the court must examine the plaintiffs' complaint at the time of the defendant's removal and assume the truth of all factual allegations contained within the original complaint. *Licursi v. Jamison,* 1998 WL 808542, 2 (E. D. Pa. 1998). The removing defendant possesses the burden to demonstrate federal jurisdiction exists. *Licursi,* 1998 WL at 3, *citing Dukes v. U.S. Healthcare, Inc.,* 57 F. 3d 350, 359 (3d. Cir.), *cert. denied,* 516 U.S. 1009, 116 S.Ct 564, 133 L.Ed.2d 489 (1995). Specifically, removal is appropriate only when the federal court would have had jurisdiction when the case was initially filed. *Licursi, citing Brown v. Francis,* 75 F.3d 860 (3d Cir. 1996) (quoting *Abels v. State Farm Fire & Cas. Co., 770* F.2d 26, 29 (3d Cir. 1985)). The removal statutes should be "strictly construed against removal and all doubts should be resolved in favor of remand." *Licursi, citing Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley,* 809 F.2d at *1010), cert. denied,* 498 U.S. 1085 (1991).

For a case to "arise under" the federal patent laws, the plaintiffs' complaint must state some "right, title or interest under the patent laws." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808, 108 S.Ct. 2166 (1988). While the plaintiff may not craft their complaint to avoid patent issues, defenses or counter-claims arising under the patent laws do not create federal jurisdiction. *Christianson,* 486 U.S. at 809. Therefore, jurisdiction under §1338 is limited to instances where a well-pleaded complaint "establishes either that federal patent law creates the cause of action or that the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal patent law." *Id.* at 809. A "substantial question" arises if federal patent law is a "necessary element" to the resolution of the state law claim. *Id.*

However, if "reasons completely unrelated to the provisions and purposes of" patent law "entitle" the plaintiffs to "the relief [they] seek," then the claim fails to arise under federal patent laws. *Id.* at 812, *citing Franchise Tax Board of Cal.*, 463 U.S. 1, 26, 103 S.Ct. 2841 (1983). While a dispute over a patent "could not exist but for the property right created" by the patent, the claim does not necessarily "arise under" federal patent law. *Int. Amor & Limousine Co. v. Moloney*, 272 F.3d 912, 915-16 (7th Cir. 2001). In addition, contracts that "may or may not constitute agreements to assign future patent applications" do not change a contract dispute into a federal question arising under patent law. *Beghin-Say Int'l, Inc. v. Old-Bendt Rasmussen*, 733 F.2d 1568, 1571 (Fed. Cir. 1984).

Here, assuming the factual allegations in the complaint are true, the plaintiffs' claims fail to arise under federal patent law for the following reasons: (1) federal patent law does not create the causes of action, and (2) the causes of action do not require the resolution of a substantial question of federal patent law.

First, federal patent law does not create the causes of action. Claims which may commonly arise under federal patent law include "patent invalidity, infringement, and patent-antitrust." *Yuksel v. N. Am. Power Tech.*, 805 F.Supp. 310, 311 (E.D.Pa. 1992). Similarly, claims requesting declarations of ownership of characters in books may arise under federal patent and copyright laws. *DeCarlo v. Archie Comics*, 127 F.Supp.2d 497, 504 (S.D.N.Y. 2001). Additionally, claims involving the amending of patent applications may arise under federal patent law. *Jacobson v. Bittner*, 694 F. Supp. 507, 509 (N.D.Ill. 1988). While patent validity and infringement are "ordinarily" matters for federal courts, "the question of who owns the patent right and on what terms typically is a question exclusively for state courts." *Jim Arnold Corp. v.*

*Hydrotech,* 109 F.3d 1567, 1572 (Fed. Cir. 1997).

Here, the plaintiffs' allege the defendant's actions give rise to a breach of fiduciary duty, usurpation of a corporate opportunity, fraud, and constructive fraud, which are state law claims. While the object of these claims is the actions surrounding a pending patent application, that fact fails to create federal jurisdiction under patent laws. Moreover, the fact this dispute arises over a pending patent application that has been previously rejected by the patent office is significant. Courts have held that Congress has passed no laws creating "actionable" claims "solely based on patent applications ... Title 35 of the United States Code creates protections and causes of actions based on issued patents only." *Yuksel,* 805 F.Supp. at 312. Thus, no patent rights yet exist under Title 35 in this case, suggesting that federal patent law does not apply. See *Murray v. Gemplus Int.,* 2002 WL 32107942 (E.D. Pa.) (concluding the court lacked jurisdiction under federal patent law in an inventorship dispute partially because no patents had yet been issued).

Additionally, while claims requesting remedies specifically enumerated by federal patent law may meet the jurisdictional requirement, federal patent laws do not exclusively proscribe the remedies requested by the plaintiffs in this case. For example, the patent statute specifically provides a remedy for patent infringement. *Jim Arnold Corp.,* 109 F.2d at 1571. Similarly, the request of an accounting with respect to infringing uses, is "traditionally available under the Act in cases of copyright infringement." *DeCarlo,* 127 F.Supp.2d at 505. However, the plaintiffs do not seek a remedy provided exclusively under federal law. Here, while the plaintiff requests relief in the form of compensatory damages and the defendant assigning his interest in the pending patent application, the plaintiff does not request a declaration of ownership or an amendment to the patent application. Moreover, courts have held that claims requesting reimbursement for the

future loss in the share of proceeds from a patentable invention as a result of defendant's fraud do not arise under the patent act, but rather state law. *Jacobson,* 694 F. Supp. at 510 (granting motion to remand to state court). Thus, the remedies requested are available under state law.

Finally, federal patent law fails to comprise a "necessary element" or "substantial issue" in the plaintiffs' claims. Claims in which the plaintiff's "right to relief necessarily depends upon resolution of a substantial" question of federal patent law should be granted federal jurisdiction. *Christianson* at 809. Accordingly, determining whether someone infringed a licensed patent or proving noninfringement is a substantial issue of patent law. *U.S. Valves, Inc. v Dray,* 190 F.3d 811 (7th Cir. 1999). However, the claim fails to arise under patent law if the plaintiff is entitled to relief for reasons "completely unrelated to the provisions and purposes" of federal patent law. *Christianson* at 810. Thus, while resolving "factual disputes concerning the originator" of the material at issue "might imply some reference to federal patent law," that does not mean that it involves "substantial issues of federal patent law." *Licursi* at 4.

Here, federal patent law fails to comprise a necessary or substantial issue in the present case. The plaintiffs only request that the court determine whether the defendants breached a fiduciary duty or committed fraud in their actions with respect to a pending patent application. The plaintiffs do not request a ruling relating to a license regarding an issued patent, nor do the plaintiffs claim or request relief for patent infringement. See *Kiest v. Kiest,* 2000 U.S. Dist. LEXIS 13556 (N.D.Ill. *2000)* (suggesting that patent infringement, validity or claims requiring interpretation of issued patents would involve substantial questions of patent law). Additionally, a claim for breach of fiduciary duty arising from a defendant's "failure to patent [an] invention jointly" does not "state a federal cause of action" and does not involve a "substantial question of

federal patent law." *Jacobson* at 509. The *Jacobson* noted the issues were whether a fiduciary duty existed, what it consisted of, and whether the defendants actions amounted to a breach. *Id.* Similarly, in the present case, the issue is whether the defendants breached a fiduciary duty while President and board members of TCP with regard to their actions towards the pending patent application and the company. The court "need not immerse itself in federal patent law" to determine whether the defendants breached their duty or committed fraud. *Id.* The court need only determine whether the defendant's conduct amounted to actionable state law claims.

## Conclusion

The plaintiffs' complaint fails to: (1) state a cause of action arising under federal patent laws, or (2) require the resolution of a substantial question of federal patent law. This case is hereby remanded to the Circuit Court of DuPage County.

So Ordered.

Entered: 9/29/03

Ronald A. Guzman
United States District Judge

9